UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES F. TOMASIK,

    Plaintiff,                               Civil Action No. 09-12816

v.                                        HON. GEORGE CARAM STEEH
                                         U.S. District Judge
                                         HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff James F. Tomasik brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, reversing the decision of the Commissioner and remanding to the administrative level for further proceedings consistent with this Report.

## PROCEDURAL HISTORY

On February 25, 2005, Plaintiff filed an application for DIB, alleging a disability onset date of July 24, 2004 (Tr. 43-45). After the initial denial of benefits on June 14, 2005, Plaintiff submitted a timely request for an administrative hearing, held in Oak Park, Michigan on July 12, 2007 (Tr. 35, 172). Administrative Law Judge ("ALJ") Daniel G. Berk presided (Tr. 172). Plaintiff, represented by attorney Donald W. Busta Jr., testified (Tr. 174-183), as

did Michael Rosko, a vocational expert ("VE") (Tr. 182-185). On July 26, 2007, ALJ Berk found that although Plaintiff was unable to perform his former job, he was capable of a significant range of other work (Tr. 20-21). On May 22, 2009, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on July 17, 2009.

## **BACKGROUND FACTS**

Plaintiff, born August 9, 1960, was just short of his 47th birthday when the ALJ issued his decision (Tr. 21, 43). Plaintiff attained a high school diploma and worked previously as a high low driver (Tr. 69, 73). He alleges disability as a result of hip replacement surgery, a learning disability, and thyroid problems (Tr. 77).

### A. Plaintiff's Testimony

Plaintiff, the father of three adult children, testified that he lived in a single family dwelling in Redford, Michigan with his wife (Tr. 174-175). Plaintiff, right-handed, reported that he currently received long-term disability benefits through his former employer (Tr. 175). He stated that he graduated from highschool but denied additional education (Tr. 175). Plaintiff reported that he held a job as a high low driver for 27 years, indicating that he was placed on Workers' Compensation leave after being limited to lifting less than ten pounds, standing less than three hours a day, and sitting less than three hours; adding that his condition obliged him to recline periodically (Tr. 176-177). Plaintiff opined that even if his employer had found a job for him allowing for these restrictions, hip pain kept him from doing any job (Tr. 179).

Plaintiff testified that he arose at 7:00 a.m. and retired at 10:30 p.m., noting that he spent his waking hours alternately lying down and performing light household chores (Tr. 179). He alleged that pain required him to recline every half hour (Tr. 179). He reported taking both Vicodin and Advil for pain, stating that he experienced only partial relief from

the combination of drugs (Tr. 180-181). Plaintiff testified that although his treating physician had recommended undergoing a total left hip replacement, his lack of health insurance precluded undergoing the procedure (Tr. 182).

### B. Medical Evidence

#### 1. Treating Sources

In April, 2001, Kevin Crawford, D.O., noting that Plaintiff reported ongoing left knee pain, observed normal ranges of motion (Tr. 92). The same month, Plaintiff underwent arthroscopy of the left knee (Tr. 112). The following month, Plaintiff exhibited minimal swelling and reduced discomfort of the knee (Tr. 92). August, 2002 imaging studies of the left knee were normal, but Plaintiff demonstrated a limited range of left hip motion (Tr. 91, 111). The following month, an MRI of the right knee showed a ligament tear (Tr. 110). The same month, Plaintiff underwent a left total hip arthroplasty without complications (Tr. 97-98, 107). Hi Song, M.D. noted that Plaintiff would be undergoing "at home" rehabilitation (Tr. 108). Imaging studies showed that the left hip prosthesis was well placed (Tr. 109). A discharge summary by Dr. Crawford states that Plaintiff was prescribed Vicodin and physical therapy (Tr. 101). The following month, physical therapy notes indicate that Plaintiff was able to walk only 50 feet (Tr. 99). At the end of October, 2002, Dr. Crawford observed that Plaintiff had "a near normal gait," but reported back pain (Tr. 90). In November, 2002, Dr. Crawford opined that Plaintiff would be able to resume work in approximately one month (Tr. 95).

In September, 2003 Mitchell Z. Pollak, M.D. noted the presence of avascular necrosis of the right hip joint (Tr. 159). In March, 2004, Mark D. Stacherski, M.D. determined that Plaintiff required a thyroid medication adjustment after a rapid weight loss and ongoing fatigue (Tr. 125). In June, 2004, Dr. Pollak opined that right hip replacement was advisable

given Plaintiff's reports of ongoing pain (Tr. 159). In July, 2004, a right hip replacement was performed without complications (Tr. 129- 130). Dr. Pollak's December, 2005 treating notes indicate that Plaintiff wanted to return to work but was cautioned to work within restrictions (Tr 161). January, 2005 physical therapy notes show that Plaintiff reported level "3" pain, at worst, on a scale of 1 to 10 (Tr. 140). The following month, Dr. Pollak noted ongoing "mild abductor weakness" with a "minimal abductor lurch" (Tr. 162). Plaintiff's gait was deemed "pretty good" (Tr. 162). In July, 2005, Plaintiff reported continuing pain and weakness on the right side with "significant tenderness" around the incision (Tr. 162). Dr. Pollak recommended steroid injections (Tr. 162).

In October, 2005, Dr. Pollak completed a "Medical Source Statement" regarding Plaintiff's ability to perform work-related functions, finding that Plaintiff was unable to lift more than ten pounds, stand or walk for more than two hours each days, or sit for even six hours (Tr. 155-156). Plaintiff's ability to push and pull in the lower extremities was deemed limited (Tr. 156). Dr. Pollak's assessment precluded all climbing, balancing, kneeling, crouching, crawling, and working with heights or machinery (Tr. 156-157). He opined that exceeding the hip prostheses range of motion would risk "fracture or dislocation," noting further that Plaintiff "may require periods of recumbent rest during the day to relieve discomfort" (Tr. 156). In May, 2007, Dr. Pollak remarked that imaging studies supported a second left hip replacement, noting that Plaintiff was currently uninsured (Tr. 164).

### 2. Consultive and Non-Examining Sources

In May, 2005, Cynthia Shelby-Lane examined Plaintiff on behalf of the SSA, noting that he was currently being treated for hypothyroidism (Tr. 146). Noting a history of hip replacement surgery in both 2002 and 2004, Dr. Shelby-Lane also observed that Plaintiff had undergone knee surgery in 1980 and 2002 (Tr. 146). Plaintiff reported fatigue as well as

difficulty standing, stooping, squatting, walking, lying down, sitting, lifting, bending, pushing, pulling, reaching, and climbing stairs (Tr. 146). He also reported a 1997 cardiac catherization after experiencing congestive heart failure (Tr. 146). Plaintiff indicated that he experienced ongoing swelling, stiffness, and tremors as well as "occasional muscle spasms" (Tr. 146). The consultive physician noted that Plaintiff did not use a cane for walking (Tr. 146). Plaintiff reported taking Synthroid daily and Advil and Tylenol #3 every other day (Tr. 146).

The following month, a Physical Residual Functional Capacity Assessment, also performed on behalf of the SSA, found that Plaintiff retained the ability to lift 20 pounds occasionally and 10 pounds frequently; stand, sit, or walk for six hours in an eight-hour workday; and an unlimited ability to push and pull in the upper and lower extremities (Tr. 81). The Assessment limited Plaintiff to occasional balancing, stooping, kneeling, crouching, crawling and ramp and stair climbing but precluded all climbing of ladders, ropes and scaffolds (Tr. 82). The Assessment found the absence of manipulative, visual, communicative, or environment limitations, determining that Plaintiff's thyroid and hypertension were non-severe (Tr. 81). The non-examining assessor found Plaintiff's account of his functional limitations "acceptable" (Tr. 88).

### 3. Material Submitted After the ALJ's July 26, 2007 Decision

On August 13, 2007, Samuel I. Goldstein, PhD. performed a consultive psychological examination, finding that Plaintiff was "functioning within the mild range of mental retardation" with an IQ (Full Scale) of 61 (Tr. 168). Dr. Goldstein found that Plaintiff was "functionally illiterate," determining further that Plaintiff's mathematical ability was at the "first grade level" (Tr. 168).

### C. Vocational Expert

VE Rosko classified Plaintiff's past relevant work as a high low driver as semiskilled at the medium exertional level, noting that his other job responsibilities of machine operating and machine washing were unskilled and medium[1] (Tr. 184). He testified that the high low position was transferrable to only exertionally medium or light work (Tr. 184). Taking into account Plaintiff's age, education, and work background, the ALJ posed the following hypothetical limitations to the VE:

> "[T]he claimant would be limited to performing work at the sedentary exertional level, and would require a sit/stand option."

(Tr. 184). The VE replied that given the above limitations, the individual could perform the sedentary, unskilled work of an assembler, packager, sorter, and visual inspector, finding the existence of 7,000 positions in the regional economy (Tr. 184). The VE reported that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), adding that information regarding the sit/stand option was based on his own professional experience (Tr. 185). The VE found that if Plaintiff's claim that he needed to recline at half hour intervals was credited, all work would be precluded (Tr. 184-185).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of "arthritis of the hips necessitating a partial left hip replacement and a total right hip replacement, history of knee surgeries, and hypothyroidism" (Tr. 16). He

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

determined however that none of Plaintiff's severe impairments met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 16). The ALJ determined that Plaintiff retained the following residual functional capacity:

> "to perform work that . . . is predominantly performed while seated, does not involve any prolonged walking or standing, limits lifting to 10 pounds [occasionally] and 5 pounds more frequently, and would allow for a sit/stand option" (Tr. 16).

Adopting the VE's testimony, the ALJ found that although Plaintiff was incapable of returning to his former job, he could perform the work of an assembler, sorter, packager, and inspector (Tr. 18, 20-21).

The ALJ found Plaintiff's allegations of limitation "not entirely credible," noting that he continued to perform light housework, prepare simple meals, perform laundry chores, vacuum, drive, shop, and pay bills (Tr. 20). He concluded that Dr. Pollak's opinion that Plaintiff was unable to perform even sedentary work contradicted the physician's own treating notes suggesting a lesser degree of limitation (Tr. 19).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Treating Physician Analysis

First, Plaintiff argues that the ALJ's analysis of Dr. Pollak's October, 2005 assessment

did not meet the requirements of 20 C.F.R. 404.1527(d)(2). *Plaintiff's Brief* at 8-10, *Docket #7*. While conceding that the ALJ supplied "reasons for discrediting Dr. Pollak's opinion," Plaintiff claims that the ALJ "failed to state the weight he gave the treating source opinion." *Id.* at 10.

### 1. General Principles

"If uncontradicted, the [treating] physicians' opinions are entitled to complete deference." *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). "[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)). Further,

> "[i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion."

*Wilson,* at 544 (*citing* 20 C.F.R. 404.1527(d)(2)).

Regardless of whether substantial evidence is found elsewhere in the record to contradict the source's findings, the ALJ is required nonetheless to give "good reasons" for rejecting the treating physician's opinion:

> "'The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'"

*Wilson* at 544 (*citing Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999)). The mere fact that a

treating physician's opinion is contradicted by another source is not a sufficient basis for its rejection. *Hensley* at 266 ("Nothing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion."). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004).

## 2. Application to the Present Case

Plaintiff's argument that the ALJ erred by failing to state the weight he gave Dr. Pollak's opinion is unavailing. First, neither the regulation nor Sixth Circuit case law suggests that in rejecting a treating physician's findings, the ALJ must state the precise extent to which he has discounted the treating opinion. While of course, he must provide adequate reasons for rejecting the physician's opinion, Plaintiff has conceded that the ALJ has done so. *Plaintiff's Brief* at 10.

Further, the ALJ's three paragraph discussion of Dr. Pollak's treating records indicates that he rejected the physician's October, 2005 finding that Plaintiff was unable to perform even sedentary but adopted his treating notes suggesting a lesser degree of impairment (Tr. 19). The ALJ cited Dr. Pollak's December, 2004 observation that Plaintiff's condition was improving and his May, 2007 indication that Plaintiff's discomfort could be treated with over-the-counter pain medication (Tr. 19). The ALJ also noted that the October, 2005 "disability" opinion stood at odds with a consultive examiner's May, 2005 finding that Plaintiff experienced largely normal ranges of joint motion (Tr. 19). Because ALJ Berk conducted a procedurally and substantively adequate analysis of Dr. Pollak's October, 2005 assessment, remand on this issue is not appropriate.

**B. The VE's Testimony**

Plaintiff, disputing the validity of the Step Five determination, argues next that the ALJ erred in failing to consider his illiteracy. *Plaintiff's Brief* at 10-11. Citing *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987), he contends that the ALJ's failure to include his cognitive problems among the hypothetical limitations invalidates the VE's finding that he could perform a significant range of sedentary work. *Plaintiff's Brief* at 11.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Varley, supra,* 820 F.2d at 779 (internal citations omitted). By the same token, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Whether learning disabilities were properly omitted from the hypothetical is a close call. In favor of the Plaintiff's argument is the fact that his sister-in-law, not he, filled out his functional report when applying for benefits (Tr. 50-57). His application for benefits alleges that he experienced a learning disability (Tr. 68). Plaintiff denied that he was able to read or write more than his name (Tr. 68).

On the other hand, Plaintiff's admission that he was able to pay his bills (implying that he was able to address an envelope, and perform simple mathematical computations) undermines this claim (Tr. 54). Likewise, Plaintiff's ability to pass the written exam required to obtain a driver's license and graduate from high school suggests that he might not be completely illiterate (Tr. 53, 73). A "Field Office" interview conducted by the SSA indicates that Plaintiff did not experience problems writing (Tr. 59). I note further that at the hearing

Plaintiff's counsel did not develop either his client's or the VE's testimony regarding a learning disability. "The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan,* 923 F.2d 1175, 1181 (6th Cir. 1990); 42 U.S.C. § 423(d). As such, the omission of Plaintiff's cognitive limitations from the hypothetical question does not constitute error.[2]

Nonetheless, in regard to Plaintiff's physical limitations, the VE's job findings, adopted by the ALJ, are tainted by the hypothetical question's deficiencies. The question posed by the ALJ limited Plaintiff only to 1) sedentary work, and 2) work with a sit/stand option (Tr. 184). The complete absence of postural limitations from the hypothetical question is not supported by substantial evidence. First, the June, 2005 Residual Functional Capacity Assessment found that Plaintiff was limited work involving no more than occasional ramp and stair climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 82). To be sure, the Court is mindful that SSR 85-15 states that so long as the individual can stoop and crouch occasionally, the base of sedentary and light jobs "is virtually intact," and as such, the ALJ's omission of these limitations from the hypothetical question would be harmless error at most. However, the hypothetical question does not account for limitations in balancing, ramp and stair climbing, kneeling or crawling.

Second, although the Assessment precluded *all* climbing of ladders, ropes and scaffolds, these limitations were also excluded from the question to the VE (Tr. 82). None of Plaintiff's daily activities or treating or consultive records suggest that he was capable of greater postural abilities than those found in the June, 2005 Assessment. Dr. Shelby-Lane

---

[2] However, on remand, the ALJ should consider later-submitted evidence substantiating the claim of illiteracy. *See* Sec. D, *infra*.

observed that Plaintiff was unable to squat and could perform only limited bending[3] (Tr. 148). Likewise, Plaintiff's daily activities such as vacuuming and occasional driving do not support the conclusion that he did not experience postural impairments. While as discussed above, the ALJ was entitled to reject Dr. Pollak's finding of more extreme limitations (Tr. 156), the record contains *no* support for the hypothetical question's exclusion of all postural limitations. As a result, the VE's job findings are insufficient to support the Step Five determination. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 (E.D. Mich. 2003)(Roberts, J.)("Because the VE's testimony was the only Step Five evidence that the ALJ relied upon, the Court cannot rule that there is substantial evidence to support the ALJ's findings").

### C. Sentence Six Material

Plaintiff contends that a consultive mental examination by Samuel I. Goldstein, PhD, conducted a few weeks after the non-disability finding, supports the contention that he is illiterate. *Plaintiff's Brief* at 11-13. Citing *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), Plaintiff argues that the newer material mandates a remand under the sixth sentence of 42 U.S.C. §405(g). *Id.*

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695-96. Sentence Six of

---

[3] A check list also completed by Dr. Shelby-Lane indicates that Plaintiff *could* squat, contradicting her comment that he was completely unable to squat. *Compare* Tr. 148, 152. A review of both pages suggests that her comment, rather than the check list, accurately reflects her observations.

42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added). Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

Although the new material is compelling, Plaintiff has failed to show good cause for the late submission. Plaintiff's counsel offers no reason for waiting to schedule the psychological evaluation by Dr. Goldstein until after the administrative opinion issued. In fact, the timing of the consultive exam suggests that it was arranged to rebut the ALJ's non-disability finding. "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue,* 2009 WL 700057, *6 (W.D.Ky. 2009)(*citing Thomas v. Secretary,* 928 F.2d 255, 260 (8th Cir., 1991).

**D. A Sentence Four Remand**

As discussed in Section, B, *supra,* Plaintiff is entitled to a remand pursuant to Sentence Four of 42 U.S.C §405(g). In contrast to a Sentence Six remand, discussed *supra,* a "Sentence Four" remand derives, not surprisingly, from the fourth sentence of § 405(g), which states:

> "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing."

In the present case, Plaintiff's proof of disability is not "overwhelming." *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994). Thus, the ALJ's errors as discussed in Section **B.**, while critical, do not automatically entitle Plaintiff to an

award of benefits. Instead, this case should be remanded to the administrative level for further fact-finding.

Further, while I note that Plaintiff has not shown good cause for a Sentence Six remand, *Faucher* holds that when an ALJ commits an error that results in a Sentence Four remand, the ALJ can consider additional evidence, even though the plaintiff has not otherwise met the requirements for a Sentence Six remand. *Id.* at 175. Accordingly, upon remand under Sentence Four, the ALJ should (1) consider Dr. Goldstein's August, 2007 report and if appropriate (2) obtain consultive psychological evaluations regarding Plaintiff's learning disability (3) supplement the hypothetical question to the VE with Plaintiff's relevant postural limitations as discussed in Section **B.**

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED, reversing the decision of the Commissioner and remanding to the administrative level for further proceedings consistent with this Report

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                            s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

Dated: April 9, 2010

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 9, 2010.

                                            s/Susan Jefferson
                                            Case Manager